# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WAYNE WILLIS, #N-42118, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 18-CV-617-SMY ) |
| WEXFORD, RYAN SUTTERER, GAIL WALLS, and DR. SIDDIQUI, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Wayne Willis, an inmate currently housed at Menard Correctional Center ("Menard"), filed this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have exhibited deliberate indifference to his serious medical condition (Type 2 diabetes and associated vision loss/pain). In connection with his claims, Plaintiff sues Wexford Health Sources, Inc., Ryan Sutterer (Menard Optometrist), Gail Walls (Menard Health Care Administrator) and Dr. Siddiqui (Menard Physician and Medical Director). Plaintiff seeks monetary damages.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

1

>complaint–
>>(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>>(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

### Dr. Siddiqui

On July 27, 2017, Plaintiff was examined by Dr. Siddiqui. (Doc. 1, p. 9). He told Dr. Siddiqui that (1) he was a Type 2 diabetic; (2) he was experiencing "major" vision blur; (3) he was having "extreme" headaches; and (4) he had not "had labs done" since April 2016. (Doc. 1, pp. 9-10). Initially, Dr. Siddiqui did not seem to believe that Plaintiff had not had his blood drawn in over a year. (Doc. 1, p. 10). However, he quickly confirmed this fact by reviewing Plaintiff's medical records. *Id.*

Dr. Siddiqui told Plaintiff he was supposed to have a chronic clinic examination, including blood testing, every four months. *Id*. Plaintiff asked why he had not been receiving regular treatment. *Id*. Dr. Siddiqui told Plaintiff he was the only physician at Menard, that

Menard was short 4 doctors (and had been for months), and that there was nothing Dr. Siddiqui could do about the situation. *Id.* He also told Plaintiff that due to the physician shortage, every medical department was behind in scheduling, and he had no idea when Plaintiff would be called for bloodwork or for chronic clinic. *Id.* At that time, Plaintiff asked Dr. Siddiqui to refer him to an optometrist. *Id.* Plaintiff emphasized that he was "rapidly losing vision" in his left eye and was having "extreme vision blur and headaches." *Id.* Dr. Siddiqui said he had no control over whether Plaintiff could be referred to an optometrist and that there was simply nothing he could do. *Id.* He then "excused [Plaintiff] from his office." (Doc. 1, p. 11).

### Dr. Sutterer

Plaintiff submitted several request slips asking for an appointment with Dr. Sutterer. (Doc. 1, p. 13). In each request slip, Plaintiff explained that he was experiencing "severe [vision] loss" and needed to be examined immediately. *Id.* All of Plaintiff's requests went unanswered.

On August 14, 2017, Plaintiff happened to encounter Dr. Sutterer "on the walk." *Id.* Plaintiff stopped Dr. Sutter and explained that he was a diabetic and that he was suffering from vision loss, blurry vision, and severe headaches. *Id.* Dr. Sutterer told Plaintiff that he was behind in scheduling and that there was nothing he could do. *Id.* Plaintiff indicated that he had been sending request slips for over a month. *Id.* Dr. Sutterer asked Plaintiff his name and confirmed that he had been receiving the request slips, but said his hands were tied because of the backlog in scheduling. *Id.*

Plaintiff encountered Dr. Sutterer again on August 28, 2017 and September 18, 2017. *Id.* On August 28, 2017, Plaintiff told Dr. Sutterer his condition was getting worse. (Doc. 1, p. 14). Dr. Sutterer said he did not know when Plaintiff would be scheduled for an appointment. *Id.* On

September 18, 2017, Plaintiff told Dr. Sutterer that his condition was getting worse and that even though he was a Type 2 diabetic, he had not been scheduled for his annual appointment. *Id.* Once again, Dr. Sutterer said he could do nothing. *Id.*

Plaintiff attempted to speak to Dr. Sutterer again on September 19, 2017. Before Plaintiff could say anything, Dr. Sutterer told Plaintiff not to talk about his eyes because he would only get the same answer. *Id.*

In early October 2017, Plaintiff received a call pass to see Dr. Sutterer. *Id.* Dr. Sutterer said he would call Plaintiff in to have his eyes dilated the following day. *Id.* However, Plaintiff did not hear back from Dr. Sutterer until he filed a grievance. (Doc. 1, p. 15).

On November 6, 2017, after he submitted the grievance, Plaintiff was called back to see Dr. Sutterer. *Id.* After Dr. Sutterer examined Plaintiff, he told him his condition was serious and that he would be referring Plaintiff to an outside specialist. *Id.* Two months later, when Plaintiff still had not been referred to an outside specialist, he submitted another grievance. *Id.*

On January 29, 2018, Plaintiff was finally examined by an outside specialist – Dr. Yates at Quantum Eye Center. Dr. Yates told Plaintiff he had a very serious condition, that he should have been referred much sooner, and that his condition would continue to worsen. *Id.* Dr. Yates referred Plaintiff to a retina specialist and prescribed medication. (Doc. 1, p. 16).

### Health Care Administrator Walls

On or about September 11, 2017, Plaintiff spoke with Walls. (Doc. 1, p. 17). He told Walls that he had not been examined for hypertension at the chronic clinic in nearly two years. *Id.* He also told Walls that he was diabetic and that he had not had bloodwork performed in nearly two years. *Id.* Walls told Plaintiff that Menard was short on physicians and had been for months. *Id.* Plaintiff told her he was experiencing extreme vision loss and needed to be seen by

a doctor. *Id.* Walls responded there was nothing she could do and walked away. *Id.*

**Wexford**

Plaintiff alleges that Wexford has a widespread practice of delaying medical treatment for inmates. (Doc. 1, p. 19). He also alleges that Wexford "refused to provide a full staff of doctors and nurse practitioners for months to tend to the thousands of inmates at Menard, [and that] this custom caused Plaintiff to suffer the delayed scheduling and treatment due to a lack of staff, is the force behind delays in medical care [and] in turn causes Plaintiff and other inmates to suffer[.]" *Id.*

**<u>Merits Review Under § 1915(A)</u>**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion regarding its merit.

> **Count 1 –** Defendants exhibited deliberate indifference to Plaintiff's serious medical condition (Type 2 diabetes and associated vision loss/pain), in violation of the Eighth Amendment.

The Eighth Amendment protects inmates from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Deliberate indifference to serious medical needs of inmates may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). In order to state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is objectively serious if it has either

"been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's Type 2 diabetes and associated symptoms (vision loss and pain) satisfy the objective component for screening purposes. However, the analysis does not end there.

The Complaint allegations must also suggest that Defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

### Dr. Siddiqui and Dr. Sutterer

For a medical professional to be held liable for deliberate indifference, he or she must make decisions or conduct themselves in a manner that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates do not have a right to demand specific care, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). By the same token, prison medical staff cannot simply continue with a course of treatment known to be ineffective. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Delaying treatment may also constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S.

6

825, 842 (1994). Also, the "deliberate refusal to treat treatable pain can rise to the level of an Eighth Amendment violation." *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013) (citing *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004)).

The Court finds the deliberate indifference standard satisfied as to Dr. Sutterer and Dr. Siddiqui. According to the Complaint, Plaintiff told both physicians that he was a Type 2 diabetic suffering from severe vision loss and headaches. He also informed both physicians that he had not been examined at the chronic clinic or had lab tests in a year or more. Both physicians ignored Plaintiff's complaints and took no action. Plaintiff claims that as a result, he suffered needlessly, his condition worsened, and his treatment was delayed. These allegations are sufficient to allow Count 1 to proceed as to Dr. Siddiqui and Dr. Sutterer.

### Health Care Administrator Walls

Plaintiff alleges that he told Walls he was being denied medical care. He specifically explained that he was a diabetic suffering from serious vision loss and that he had not been seen by the chronic care clinic or had his blood drawn in more than a year. Walls told Plaintiff the prison was short staffed and took no action on Plaintiff's behalf. Walls' alleged failure to take action on Plaintiff's behalf, after Plaintiff brought these complaints to her attention, sufficiently suggests deliberate indifference at the pleading stage. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (non-medical defendant may be chargeable with deliberate indifference if he or she has reason to believe that prison medical staff members are ignoring a prisoner's medical needs and fails to act).

7

### Wexford

Wexford is a corporation that employs health care providers at IDOC facilities, including Menard, and provides medical care to inmates, but it cannot be held liable solely on that basis. Rather, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff alleges that Wexford had a custom or policy of understaffing its facilities and of delaying medical appointments. Plaintiff also alleges that he was harmed by Wexford's policy of understaffing its facilities and delaying medical appointments. These allegations are sufficient to allow Count 1 to proceed as to Wexford.

### Pending Motions

Plaintiff's Motion to Appoint Counsel (Doc. 3) shall be referred to United States Magistrate Judge Reona J. Daly for further consideration.

### Disposition

**IT IS HEREBY ORDERED** that the Complaint, which includes **COUNT 1**, will proceed as to **WEXFORD, SUTTERER, WALLS,** and **SIDDIQUI**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **WEXFORD, SUTTERER, WALLS,** and **SIDDIQUI**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to

sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings, including Plaintiff's Motion for Appointment of Counsel. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 30, 2018**

s/ STACI M. YANDLE
**U.S. District Judge**
